UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Lisa Pickett,<br><br>Plaintiff,<br><br>v.<br><br>HFU/Roadrunner Transportation Systems, LLC; et al.,<br><br>Defendants. | Case No. 2:26-cv-01455-JAD-DJA<br><br>**Order** |

Under 28 U.S.C. § 1915 Plaintiff is proceeding in this action *pro se* and has requested authority to proceed *in forma pauperis* (meaning, without paying the filing fee). (ECF No. 5). Plaintiff has also filed a complaint. (ECF No. 1-2). Plaintiff has further moved the Court to appoint counsel in this matter. (ECF No. 1-5). Because the Court finds that Plaintiff's application is complete, it grants the application to proceed *in forma pauperis*. However, because the Court finds that Plaintiff's complaint does not allege sufficient facts to state a claim upon which relief can be granted, the Court dismisses Plaintiff's complaint without prejudice and with leave to amend. The Court further denies Plaintiff's motion for appointment of counsel because she has not shown that exceptional circumstances exist.

**I. *In forma pauperis* application.**

Plaintiff filed the affidavit required by § 1915(a). (ECF No. 5). Plaintiff has shown an inability to prepay fees and costs or give security for them. Accordingly, the request to proceed *in forma pauperis* will be granted under 28 U.S.C. § 1915(a). The Court will now review Plaintiff's complaint.

**II. Legal standard for screening.**

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is

legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice. *Id.* at 678. Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed. *Twombly*, 550 U.S. at 570. Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. *See Rasul v. Bush*, 542 U.S. 466, 489 (2004). Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law. *Republican Party of Guam v. Gutierrez*, 277

F.3d 1086, 1088-89 (9th Cir. 2002). Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different states." Generally speaking, diversity jurisdiction exists only where there is "complete diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

**III. Screening the complaint.**

Plaintiff sues HFU/Roadrunner Transportation Systems, LLC, Roadrunner Transportation Systems, LLC, Jacque House, Mark Brewster, and Ashley Colon, bringing four claims.[1] Under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e-2000e-17, Plaintiff sues for: (1) employment discrimination on the basis of race; (2) retaliation; and (3) hostile work environment. She also brings an age discrimination claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. Plaintiff alleges that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") and that the EEOC issued a right to sue letter on February 13, 2026. Plaintiff filed this action 88 days later, on May 12, 2026.

Plaintiff alleges that she was hired by Defendants on or about July 29, 2024. Plaintiff asserts that shortly into her employment, Defendant Jacque House ("House") warned Plaintiff about "favoritism" related to her friendship with Tom Campbell ("Campbell")—a non-party coworker who helped Plaintiff secure her position. Plaintiff explains that from then on, she was subjected to "heightened scrutiny, retaliation, disparate treatment, hostility, and selective discipline." Plaintiff further alleges that House and other employees participated in lodging

---

[1] Plaintiff names Mark Brewster and Ashley Colon as Defendants in the caption but she alleges no facts against them in the body of her complaint beyond their roles as an executive/supervisor/manager and human resources officer respectively.

exaggerated complaints and accusations to management against Plaintiff involving her and Campbell. She contends that she never received the opportunity to respond to the complaints or provide an explanation for the accusations. Plaintiff also alleges that House misconstrued Plaintiff's regular words, tone, conduct and demeanor as aggressive, which she believes to be related to racial stereotypes associated with African American women.

Plaintiff then recounts particular interactions she experienced with various coworkers.[2] Around July 2025, Plaintiff experienced an interaction with one of her coworkers—"Mike"—in which he accused Plaintiff of leaving a plate in a vehicle window. Plaintiff alleges that she had already explained to Mike earlier that her application was not functioning properly that day and that she had already shown Mike the plate at issue. Plaintiff asserts that House observed this interaction but failed to address the situation fairly.

In another interaction with a different coworker, Plaintiff alleges that she was approached by Susan M. ("Susan"), who questioned Plaintiff about a near-accident involving company vehicles. Without Plaintiff's consent, Susan recorded their conversation and attempted to make Plaintiff appear negative and intimidating in front of other coworkers. Plaintiff explains that she asked Susan to delete the video to which Susan responded, "[Plaintiff], you do not intimidate me." Plaintiff asserts that Susan's conduct was "humiliating, intimidating, racially charged, and contributed to the hostile work environment." Plaintiff alleges that coworker Scott Spears also admitted that he disliked Plaintiff and that he showed negative reactions to interactions and comments related to Plaintiff.

---

[2] The following coworkers are not named as Defendants to this action. However, to the extent that Plaintiff argues that her employer is vicariously liable for the actions of her coworkers—rather than an employee with supervisory authority over Plaintiff— Defendant employers could not be vicariously liable for that harassment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."); *Vance v. Ball State Univ.*, 570 U.S. 421, 431-432 (holding an employee is a "supervisor" "only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassigning with significantly different responsibilities, or a decision causing a significant change in benefits.") (internal quotes omitted).

Plaintiff believes that management and other employees targeted Plaintiff due to her relationship with Campbell, who was later involved in an accident and terminated. Plaintiff alleges that she had information and observations related to the accident, but Defendants never interviewed Plaintiff and failed to fairly investigate the incident before terminating Campbell. Plaintiff asserts that his termination was really based on "false accusations, favoritism allegations, exaggerated complaints, and fabricated reasons." Plaintiff contends that management actively separated her and Campbell, stating that they would not be permitted to work together. Plaintiff states that her removal was intentional because—following her termination on or about August 12, 2025, via a text message—Defendants permitted Campbell to return to work. Plaintiff alleges that Defendant's conduct caused her humiliation, embarrassment, emotional distress, anxiety, loss of dignity, loss of income, and loss of employment opportunities. She brings this suit, seeking damages, costs of suit, and injunctive relief.

***A. Employment discrimination in violation of Title VII.***

To establish a prima facie case of discrimination, the plaintiff must show that: (1) he belongs to some protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside his classification more favorably. *Chuang v. Univ. of Cal. Davis, Bd. of Tr.*, 225 F.3d 1115, 1123 (9th Cir. 2000). Here, Plaintiff has not alleged a colorable claim for employment discrimination. Plaintiff alleges sufficient facts to meet the first three elements establishing a prima facie case of discrimination: (1) she alleges that she was part of a protected class as an African American female; (2) that she performed her duties responsibly and professionally throughout her employment; and (3) that she suffered an adverse employment action when she was terminated. However, Plaintiff does not adequately allege that her coworkers are similarly situated employees. She also does not allege that they are outside Plaintiff's protected class because Plaintiff does not indicate their respective classifications. Plaintiff provides multiple accounts of negative interactions with other coworkers—such as Mike, Susan M., Jim Stafford, and Scott Spears— but at this stage the Court is unable to evaluate whether they are similarly situated and whether any of these individuals fall outside of Plaintiff's protected class.

Moreover, Plaintiff does not plead facts plausibly showing that her termination was based on a protected characteristic. *See Boru v. Ingram Micro Services LLC*, No. 2:18-CV-00982-RFB-BNW, 2019 WL 6481286, at *3 (D. Nev. Dec. 2, 2019) (dismissing Plaintiff's employment discrimination claim without prejudice because Plaintiff did not offer any facts indicating that his constructive termination was because of his race, color, religion, sex, or national origin.). Instead, Plaintiff's allegations appear to largely center around her relationship with Campbell. Plaintiff alleges that House warned her about favoritism related to her relationship with Campbell; that thereafter certain employees lodged complaints about Plaintiff and Campbell to management; that Plaintiff was targeted due to her association and friendship with Campbell; and that management actively sought to separate the two. Title VII prohibits employers from discriminating against an individual because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). To the extent that Plaintiff hinges her discrimination claim on her association or friendship with another coworker, this is not considered a protected class for purposes of Title VII. So, the Court dismisses Plaintiff's employment discrimination claim without prejudice and with leave to amend.

***B. Retaliation in violation of Title VII.***

To establish a prima facie case of retaliation, a plaintiff must show "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006). Here, Plaintiff fails to state a colorable claim for retaliation. Plaintiff alleges that she suffered the adverse employment action of termination. But she does not allege facts indicating that she undertook a protected activity under Title VII or that there was a causal link between the two or—in other words— that Plaintiff's protected activity was the reason for the retaliation. On the contrary, as outlined above, causation is unclear because it appears that Plaintiff's allegations seem to predominantly center around her relationship with Campbell. So, the Court dismisses Plaintiff's retaliation claim without prejudice and with leave to amend.

//

//

***C. Age Discrimination in Violation of the ADEA.***

The Age Discrimination in Employment Act of 1967 (“ADEA”), 29 U.S.C. § 623, provides, “[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s age.” 29 U.S.C. § 623(a)(1). “In order to establish a prima facie case of [age] discrimination, a plaintiff must show (1) that he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably.” *Maluf v. Bergelectric Corp.*, No. 2:23-CV-00115-CDS-VCF, 2023 WL 2717323, at *4 (D. Nev. Mar. 30, 2023) (citing *Leong v. Potter*, 347 F.3d (9th Cir. 2003)).

Here, Plaintiff fails to state a colorable claim for age discrimination in violation of the ADEA. Plaintiff alleges that she is in the protected class of people over the age of forty and that she experienced an adverse employment action when she was terminated. But she does not allege that the person who replaced her after she was terminated was younger and of an age that is outside the protected class. Taking the facts as currently pleaded, Plaintiff alleges that Campbell was permitted to return to work following Plaintiff’s termination. But Campbell’s age, whether he returned to work as a replacement for Plaintiff, and whether that decision was related to Plaintiff’s age are unclear at this juncture. And Plaintiff includes no additional facts indicating that another individual other than Campbell was potentially hired following her termination. To the extent that Plaintiff alleges that “Defendants discriminated against Plaintiff on the basis of age with respect to the terms, conditions, privileges, discipline, and termination,” (ECF No. 1-2 at 6), this is too conclusory to state a claim upon which relief can be granted. So, the Court dismisses Plaintiff’s age discrimination claim without prejudice and with leave to amend.

***D. Hostile Work Environment***

An employer can violate Title VII by creating a hostile work environment. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). A hostile work environment violates “Title VII's guarantee of the right to work in an environment free from discriminatory

intimidation, ridicule, and insult." *Id.* To show a hostile work environment, a plaintiff must show "(1) that [s]he was subjected to verbal or physical conduct of a racial ... nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 686 (9th Cir. 2017).

A plaintiff must plead facts to show that the work environment was both subjectively and objectively hostile. *Id.* at 687. The perspective of a reasonable person belonging to the plaintiff's protected class determines objective hostility. *Id.* Hostile work environment claims are subject to a "demanding" standard. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Therefore, courts must deny complaints based on "the ordinary tribulations of the workplace, such as the sporadic use of abusive language." *Id.* Courts look at the conduct's frequency, severity, and "whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787-88. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficient. *Id.* at 788. Still, "the harassment need not be so severe as to cause diagnosed psychological injury." *Reynaga*, 47 F.3d at 687.

Here, Plaintiff has not stated a colorable claim for hostile work environment. Plaintiff alleges multiple incidents involving hostile and intimidating conduct from various coworkers. However, her allegations face one of two issues: the conduct at issue is either unrelated to her race or—to the extent she contends it is—she does not sufficiently connect that conduct to her race. First, Plaintiff alleges that the hostile environment began after House voiced warnings to Plaintiff about "favoritism." She explains that other coworkers then participated in lodging exaggerated complaints to management regarding Plaintiff's relationship with Campbell and that management endeavored to separate them. These instances are not verbal or physical conduct of a racial nature for purposes of showing a hostile work environment because they are not related to race.

On the other hand, Plaintiff alleges two instances that she contends were racial in nature: (1) House frequently misconstrued Plaintiff's behavior and demeanor as aggressive, which she

believes to be related to stereotypes about African American women and (2) Susan recorded an interaction with Plaintiff in which she attempted to portray Plaintiff as negative and intimidating. However, Plaintiff does adequately explain how this conduct is connected to race beyond bare assertions that the interactions were racially charged. Plaintiff further asserts that the hostile environment was based on "severe and pervasive harassment, hostility, intimidation, stereotyping, humiliation, and discriminatory treatment sufficient to alter the conditions of employment and create an abusive working environment." (ECF No. 102 at 6). However, Plaintiff states the causal element as a legal conclusion without supporting factual allegations, which is insufficient to state a claim. *See Ashcroft*, 556 U.S. at 678. As a result, Plaintiff's hostile work environment claim is dismissed without prejudice and with leave to amend.

**IV. Plaintiff's motion for appointment of counsel.**

Civil litigants do not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). In very limited circumstances, federal courts are empowered to request an attorney to represent an indigent civil litigant. For example, courts have discretion, pursuant to 28 U.S.C. § 1915(e)(1), to "request" that an attorney represent indigent civil litigants upon a showing of "exceptional circumstances." *Ageyman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004). The circumstances in which a court will make such a request, however, are exceedingly rare and require a finding of extraordinary circumstances. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 799-800 (9th Cir. 1986). The difficulties inherent in proceeding pro se do not qualify as exceptional circumstances. *Housewright*, 900 F.2d 1332, 1335-1336 (9th Cir. 1990). Any pro se litigant "would be better served with the assistance of counsel." *Rand v. Rowland,* 113 F.3d 1520, 1525 (9th Cir. 1997) (citing *Wilborn,* 789 F.2d at 1331).

To determine whether the "exceptional circumstances" necessary for appointment of counsel are present, courts evaluate (1) the likelihood of plaintiff's success on the merits and (2) the plaintiff's ability to articulate his claim *pro se* "in light of the complexity of the legal issues involved." *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn v. Escalderon*, 789 F.2d 1328,

1331 (9th Cir. 1986)). Neither of these factors is dispositive and both must be viewed together. *Wilborn*, 789 F.2d at 1331.

Here, at this stage in the litigation, Plaintiff has not demonstrated exceptional circumstances. Plaintiff's case is still at the screening stage, and she has not stated a cognizable claim for relief yet, making it difficult for the Court to determine Plaintiff's likelihood of success on the merits. Additionally, thus far, Plaintiff has demonstrated an ability to articulate her claims even though she is proceeding pro se. So, at least at this stage of the litigation, Plaintiff has not demonstrated exceptional circumstances, and the Court denies her motion for appointment of counsel without prejudice. (ECF No. 1-5).

**IT IS THEREFORE ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 5) is **granted.**

**IT IS FURTHER ORDERED** that Plaintiff's complaint (ECF No. 1-1) is **dismissed without prejudice and with leave to amend**. Plaintiff will have until **December 16, 2026,** to file an amended complaint if the noted deficiencies can be corrected. If Plaintiff chooses to amend the complaint, Plaintiff is informed that the Court cannot refer to a prior pleading (i.e., the original complaint) to make the amended complaint complete. This is because, generally, an amended complaint supersedes the original complaint. Local Rule 15-1(a) requires that an amended complaint be complete without reference to any prior pleading. Once a plaintiff files an amended complaint, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each Defendant must be sufficiently alleged. **Failure to comply with this order will result in the recommended dismissal of this case.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel (ECF No. 1-5) is **denied without prejudice.**

//

//

//

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to **send** Plaintiff a copy of this order to her physical address.

DATED: November 16, 2026,

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE